SAMUEL DICKINS, PLAINTIFF IN ERROR v. WILLIAM M. BEAL.

Bills of exchange were drawn and dated at Hazelwood, Madison county, Tennessee, by D. & T., on W. & F. at New Orleans, the drawers having no funds in the hands of the drawees, or authority from them to draw such bills. W. & F. had written to the cashier of the branch Bank of the United States at Nashville, informing him that D. & T. were authorized to make negotiations, by bills on them, with the bank, and that such bills would be honoured; but the bills on which this suit was instituted by the holder and indorser, residing in New Orleans, were not negotiated with the bank. The bills were refused acceptance by W. & F.; were protested for non-acceptance on the same day, and notice of the same was given by the notary to the drawers and indorser by letters put into the postoffice, addressed to them at Hazelwood, Madison county, Tennessee; the notary, as was testified, not knowing of any other residence of the parties than that designated in the caption of the bill; and that he had made inquiry for further information of persons likely to know. Evidence was given to show that letters from New Orleans for Hazelwood, in Madison county, West Tennessee, were sent to Nashville, and that from that postoffice they were sent to Spring Creek postoffice. That D., the drawer of the bills, and the indorser of the other, was the postmaster at Spring creek, Madison county, Tennessee. Hazelwood was near Spring creek postoffice. It was also testified that letters from New Orleans, for the western district of Tennessee, come to Nashville for distribution unless there was a river mail, in which case they would be delivered at Memphis and be distributed thence. The letters of W. & F. to the cashier of the branch Bank of the United States at Nashville, were offered in evidence by the drawers of the bills, to show that they were entitled to regular notice of the protest of the bills. It was held, that the circuit court properly rejected this evidence; as the letters did not apply to, and had no connection with the bills which were the subject of this suit.

An established exception to the general rule, that notice of the dishonour of a bill must be given to the drawer, is, where he has no funds in the hands of the drawee; but of this exception there are some modifications: If the drawer has made, or is making a consignment to the drawee, and draws before the consignment comes to hand. If the goods are in transitu, but the bill of lading is omitted to be sent to the consignee, or the goods were lost. If the drawer has any funds or property in the hands of the drawee, or there is a fluctuating balance between them in the course of their transactions; or a reasonable expectation that the bill would be paid. Or if the drawee has been in the habit of accepting the bills of the drawer, without regard to the state of their accounts, this would be deemed equivalent to effects. Or if there was a running account between them. In all such cases the drawer is considered as justified in drawing, so far as his having a right to draw; that "the transaction cannot be denominated a fraud: for in such case it is a fair commercial transaction, in which the drawer has a reasonable expectation that his bill will be honoured; and he is entitled to the same notice as a drawer with funds, or authority to draw without funds."

But unless he draws under some such circumstances, his drawing without funds,

[Dickins v. Beal.]

property or authority, puts the transaction out of the pale of commercial usage and law; and as he can in no wise suffer by the want of notice of the dishonour of his drafts, that it is deemed an useless form.

Notice of the dishonour of bills of exchange must be made out in two ways : 1. That the bills had been duly protested for non-acceptance ; and due and legal diligence used in giving notice thereof to the parties on the bills : in which case the legal presumption of its receipt in time would attach. 2. By proof that the notice actually came to hand in proper time ; though the letter containing the notice was not properly directed, or sent by the most expeditious or direct route. The facts of notice, and its reception in due time, are the only matters material to the drawer or indorser of a dishonoured bill ; the manner or place in which they receive such notice is immaterial ; for all the objects to be answered by its reception, it is equally available to them. To the holder it is immaterial whether the evidence of notice consists in the legal presumption arising from due diligence, which supplies the place of specific evidence, and is binding on a jury as proof of the fact of its reception ; or it is established by direct evidence, or such circumstance as will in law justify them in drawing the inference.

Since the case of Buckner v. Findley and Van Lear, 2 Peters 589, 591, decided on great consideration, it has been the established doctrine of this court, that a bill of exchange, drawn in one of the states of this union, on a person in another, is a foreign bill, and to be treated as such ; and that in this respect they are to be considered as states foreign to each other, though they are otherwise as to all the purposes of their federal constitution. Among these purposes are the establishment of postoffices and post roads. The usage of the officers employed in the various details of the operations of the department, when acting within the line of their duty as prescribed by law and regulations ; becomes all important to a court and jury in deciding on what is legal diligence in giving notice, or what is evidence of its reception.

It is legal diligence in the holder of a bill, if he avails himself in time of the means of communicating notice, which are thus afforded ; but he is not answerable for any defects in the outlines or details of the regulation of the mails, for the route in which the letter is carried, the time which elapses from its deposit in the office and delivery, or the mode of carrying or distributing the mails : but it is proper that he should give evidence of all these matters, as well to repel the imputation of laches if the letter does not come to hand, or not in due time, as to prove its regular delivery, if there should be any doubt as to the use of diligence, in the direction or deposit of the letter. Such evidence is uniformly received in cases arising on the notice of dishonoured bills.

It is sufficient proof that bills of exchange were protested for non-acceptance or non-payment, if the notary testifies he put notice thereof into the postoffice, without producing a copy of the notice or proving its contents.

What will be considered as due diligence in giving notice of the dishonour of a bill of exchange, as between the holder and the drawer or indorsee of a dishonoured bill. The question of their liability depends not on actual notice, but on reasonable diligence ; which is in all cases tantamount to actual notice, whether given or not.

As the bills on which this suit was brought were foreign bills, the protests produced at the trial were in themselves evidence of the demand and protest. The oath of the notary, that he put the notice into the postoffice, on the day of protest, is competent and sufficient in law to prove the fact.

IN error to the circuit court of the United States for the district of West Tennessee.

This case was submitted to the court, without argument, by Mr Porter, and Mr Crittenden.

Mr Justice BALDWIN delivered the opinion of the Court.

Samuel Dickins, the defendant, and Jesse Taylor, were partners, transacting business at Hazelwood, Madison county, Tennessee, which was the residence of Dickins.   On the 6th of December 1832, Taylor drew a bill of exchange for 1448 dollars, on Wilcox and Feron, New Orleans, in favour of Dickins, payable on the 1st of May 1834, which Dickins indorsed to the plaintiff.   On the same day Dickins and Taylor drew two other bills, on the former house, in favour of the plaintiff: one for 2802 dollars, payable the 1st of May ; the other for 1590 dollars, payable the 1st of April 1834.   The three bills were dated at Hazelwood, Madison county, Tennessee ; presented to the drawers on the 3d of June 1833, for acceptance ; which being refused, they were protested, for non acceptance, by a notary public; who, on the same day, gave notice thereof to the drawer and indorser of the first, and the drawers of the other two, by letters put into the postoffice, addressed to them at Hazelwood, aforesaid.   It was testified by the notary that, not knowing of any other residence of the parties, than that designated by the caption of the bill, he forwarded the notices accordingly, after inquiring of persons likely to know.

It appeared that all the bills were drawn without funds, or authority to draw ; nor was any evidence offered to show that either Dickins or Taylor had any reason to think that their bills on Wilcox and Feron would be honoured, except two letters from Wilcox and Feron, dated the 1st of December 1831, addressed to the cashier of the branch Bank of the United States at Nashville.   In one they say, " Messrs Dickins and Taylor are authorized in making negotiations, to value on our house in New Orleans, for say 10,000 dollars ; in such form and at such time as they may think proper, and same will be duly honoured."   In the other, " our friend, colonel Samuel Dickins, is authorized in negotiating with your institution, to value on our house in New Orleans, at any time, for such sums as he may think proper; and same will be duly honoured by W. and F."

[Dickins v. Beal.]

These letters were in the handwriting of Wilcox and Feron, and in the possession of Dickins : they were offered to show that he was entitled to regular notice of the protest of the bills drawn by Dickins and Taylor; but were rejected by the court as incompetent.

The plaintiff resided at New Orleans. Jackson is the county town of Madison county, Tennessee, about fourteen miles from Hazelwood, the defendant's residence, which is on Spring creek about half or three-fourths of a mile from a postoffice called Spring Creek Postoffice ; of which the defendant was postmaster and did his business there in June 1833. This was known to plaintiff, who, about and before the 3d of June 1833, directed a letter to defendant at " Hazelwood, Spring Creek, Madison county, Tennessee," and one to " Colonel Samuel Dickins, postmaster, Spring creek, Madison county, Tennessee." At the trial, the plaintiff offered to prove, by the postmaster at Nashville, and his deputy, that that place was the distributing office for letters from New Orleans, intended for West Tennessee, including the county of Madison ; that in June 1833 they knew defendant was postmaster at Spring creek ; that if in distributing the mail they had seen a letter addressed to defendant at Hazelwood, they would have sent it to Spring Creek postoffice. Also to prove, by the postoffice books at Nashville, that on the 13th of June 1833, the New Orleans mail arrived at Nashville ; and on the 14th, a package was sent to Spring Creek postoffice, which had come to Nashville for distribution, and was rated at fifty cents postage.

To this evidence it was objected, by the defendant, that inasmuch as the putting a letter into the postoffice containing notice of a protest, properly directed, forms a conlusive legal presumption that such notice was duly given and received; it was also a legal presumption that the notice went to the place directed and no other; and that the plaintiff was concluded from showing, either that the destination of the letter was changed on its passage, or was in point of fact sent to any other place.

The court overruled the objection, and the evidence was received.

It was also testified that letters from Orleans, for the western district of Tennessee, come to Nashville for distribution, unless there was a river mail, in which case they would be delivered at Memphis and be distributed thence ; other evidence was also given in relation to the course of the mail, and the usage of the postoffice at Nashville, which is needless to recite. In their charge to the jury, the court instructed them that the usage of a distributing office in con-

formity to law, and the authorized regulations of the department, and in the discharge of the official duties of the officers employed, might properly be taken into their consideration of the question submitted to them; which was, whether, from the usual course of the mail, and the usage as proved, the notice of the protest would necessarily reach Spring Creek postoffice, or would fail to reach it, or be carried to some other office: in the first case, the court instructed them that the notice was served on the defendant; but in the other the drawer was discharged unless actual notice was served.

Several instructions were prayed by the defendant, which the view taken by the court renders it unnecessary to consider, as they relate to matters not material to the cause; and if given either way, they could not affect the right of either party. One, however, deserves particular notice, which was, "that the evidence of the notary was not sufficient proof that a legal notice was sent; but that he ought to have set out a copy of the notice, or stated its contents, in order that the court might judge whether it was sufficient." The court refused to give this instruction; but stated that it might reasonably be inferred from the nature of the notice, and from the fact that notice was given, as stated in the deposition.

Exceptions were taken to the decision of the court on the questions of evidence, and the various matters given in charge to the jury.

The first question which arises, is on overruling the admission in evidence of the two letters from Wilcox and Feron to the cashier of the branch bank at Nashville.

It was in full proof that Taylor and Dickins never had a dollar in the hands of Wilcox and Feron, to pay any draft drawn on the latter, nor any money or other property in their hands to meet the bills at the time they became due, or any funds in their hands when presented and protested for non-acceptance. No proof was offered that Dickins and Taylor, or either of them, had made any consignments to Wilcox and Feron as an expected or anticipated fund on which to draw. It was also proved, that Jesse Taylor had neither funds or property in the hands of the drawees, when his bill in favour of Dickins was presented for acceptance, or when it became due; and that they had received no advice of such bill: and that the two bills of Dickins and Taylor, drawn in favour of the plaintiff, one for 2802 dollars and the other for 1598 dollars, balanced their account on his books. It is clear, therefore, that this transaction was not a negotiation within the meaning or intention of these letters:

[Dickins v. Beal.]

they evidently referred to negotiations at the bank, or within the sphere of its operations in the commercial transactions of the firm; the one referring to Dickins alone was expressly limited to negotiations with that bank. The remittance of these bills to New Orleans, in payment of an antecedent debt to the plaintiff, was in no sense of the term a negotiation of them; and was so utterly inconsistent with the evident object of the letters, that the most remote expectation could not have been entertained that they would have been accepted.

A mercantile house conducting operations at Memphis and New Orleans, would, in the course of their business, lend their credit in anticipation of consignments; while they would refuse it to pay the debts due to other persons: these considerations could not escape the consideration of Dickins and Taylor, when they sought to make Wilcox and Feron their creditor, instead of Beall by such a fraudulent abuse of the letters of credit. Had these bills come to the hands of an innocent holder in the course of trade, with a knowledge of these letters, the case would have been different: or if the bank had negotiated them, there would have been a reasonable expectation that they would have been honoured: but Dickins and Taylor could have entertained no such expectation. The letters were, therefore, properly excluded, and the case must be considered as if they had not existed.

An established exception to the general rule that notice of the dishonour of a bill must be given to the drawer is, where he has no funds in the hands of the drawee; but of this exception there are some modifications. 4 Cr. 154; 1 D. & E. 405; 2 D. & E. 712; 12 E. 175; 20 J. R. 149, 150.

If the drawer has made, or is making a consignment to the drawer; and draws before the consignment comes to hand. 12 E. 175.

If the goods are in transitu, but the bill of lading is omitted to be sent to the consignee or the goods were lost. 16 E. 43.

If the drawer has any funds or property in the hands of the drawee; or there is a fluctuating balance between them in the course of their transactions; 15 E. 221; or a reasonable expectation that the bill would be paid. 4 M. & S. 229, 230. Or if the drawee has been in the habit of accepting the bills of the drawer without regard to the state of their accounts, this would be deemed equivalent to effects. 12 E. 175. Or if there was a running account between them. 15 E. 221.

In all such cases the drawer is considered as justified in drawing;

as so far having a right to draw, that "the transaction cannot be denominated a fraud : for in such a case it is a fair commercial transaction, in which the drawer has a reasonable expectation that his bill will be honoured ; and he is entitled to the same notice as a drawer with funds, or authority to draw without funds." 15 E. 220 ; 16 E. 44.

But unless he draws under some such circumstances, his drawing without funds, property or authority, puts the transaction out of the pale of commercial usage and law ; and as he can in no wise suffer by the want of notice of the dishonour of his drafts, that it is deemed an useless form. "Notice, therefore, can amount to nothing, for his situation cannot be changed." In a case where he has no fair pretence for drawing, there is no person on whom he can have a legal or equitable demand, in consequence of the non payment or non acceptance of the bill. This is the rule, as laid down by this court in French v. The Bank of Columbia, 4 Cr. 153, 164 ; on a very able and elaborate review of the then adjudged cases ; which is fully supported by those since decided in England, and in the supreme court of New York. The case of the defendant falls clearly within the rule applicable to bills drawn without funds, or any bona fide, reasonable or just expectation of their being honoured ; and notice of their dishonour was not necessary. The case requires no opinion whether notice of the dishonour of Taylor's bill in favour of Dickins was necessary, and we forbear to express any.

The next question which arises, is on the admission of the evidence of the postmaster at Nashville, and his deputy ; in relation to the course of the mail, the usage of the office, and the facts to which they testify.

We are at a loss to perceive any plausible objection to the evidence which was received by the court, on the assumption that notice of the dishonour of the bills must be made out by the plaintiff; which could be done in two ways. 1. That the bills had been duly protested for non-acceptance ; and due and legal diligence used in giving notice thereof to the parties on the bills ; in which case the legal presumption of its receipt in time would attach. 2. By proof that the notice actually came to hand in proper time ; though the letter containing the notice was not properly directed, or sent by the most expeditious or direct route. The fact of notice, and its reception in due time, are the only matters material to the drawer or indorser of a dishonoured bill ; the manner or place in which he receives

[Dickins v. Beal.]

such notice is immaterial ; for all the objects to be answered by its reception, it is equally available to them. To the holder it is immaterial whether the evidence of notice consists in the legal presumption arising from due diligence, which supplies the place of specific evidence, and is binding on a jury as proof of the fact of its reception ; or it is established by direct evidence, or such circumstances as will in law justify them in drawing the inference. 2 Peters 132.

Since the case of Buckner v. Findley and Van Leer, 2 Peters 589, 591 ; decided on great consideration ; it has been the established doctrine of this court, that a bill of exchange drawn in one of the states of this union, on a person in another, is a foreign bill, and to be treated as such ; and that in this respect they are to be considered as states foreign to each other, though they are otherwise as to all the purposes of their federal constitution. Among these purposes are the establishment of postoffices and post roads ; the regulation of which has been delegated to the federal government ; and is exercised by their laws and the regulations of the postoffice department conformably thereto. On these depend all the communications between the states by mail ; the time of departure from different places ; its route, place and course of its arrival and distribution. The usage of the officers employed in the various details of the operations of the department, when acting within the line of their duty, as prescribed by law and regulations ; become all important to a court and jury in deciding on what is legal diligence in giving notice, or what is evidence of its reception.

It is legal diligence in the holder of a bill, if he avails himself in time of the means of communicating notice, which are thus afforded ; but he is not answerable for any defects in the outline or details of the regulation of the mails, for the route in which the letter is carried, the time which elapses from its deposit in the office and delivery, or the mode of carrying or distributing the mails : but it is proper that he should give evidence of all these matters, as well to repel the imputation of laches if the letter does not come to hand, or not in due time ; as to prove its regular delivery, if there should be any doubt as to the use of diligence, in the direction or deposit of the letter. Such evidence is uniformly received in cases arising on the notice of dishonoured bills.

The next question arises on the prayer of the defendant to instruct the jury, that proof that the bills were protested and notice thereof

put into the postoffice, was not sufficient, without producing a copy of the notice, or proving its contents.

In Lindenberger v. Beall, the notary testified that notice of non payment was enclosed in a letter addressed to the defendant at H., and put into the postoffice at G.: he had no recollection of these facts, and only knew them from his notarial book, and the protest made out at the time; from which, and his invariable practice, he presumed he had done so. This was held sufficient proof of such notice, and that it was unnecessary to give notice to defendant to produce it. 6 Wheat. 104, 106. In Nichols v. Webb, the notary was dead; but on a memorandum on the margin of the protest, it was stated in his handwriting, "Indorsee duly notified in writing 19th July 1819, the last day of grace being Sunday the 18th;" which was held competent proof of notice. 8 Wheat. 326, 330. In this case, the protests were produced at the trial, and the oath of the notary positive as to the fact of notice: this is entirely equivalent to an entry on his books, proved only by his handwriting after his death, or his belief arising from the fact of having made such entry, connected with his uniform usage. It must therefore be taken as settled law, that such is sufficient proof that the notice required by law was given. It remains to consider whether the letter containing the notice was so directed and deposited in the postoffice at Orleans as to comply with the law.

In cases of this description, the true question is, whether due diligence has been used by the holder of the bill; not whether he has given, or the defendant has received notice: both are immaterial, if reasonable diligence has been used. This consists in giving notice, if, after the usual and proper inquiries are made, it is practicable to give it: but if, when this is done, the holder or notary cannot give the notice personally, where the parties reside in the same place, or does not know where to direct it by mail, the inquiry is diligence, without giving notice. After inquiring from other parties to the bill, and examining the directory, if the party's residence cannot be found; 3 Camp. 263; if on calling at his residence, or place where he transacts his business, he is not to be found, or any other person who can receive notice, it may be left there; or, if his house of business or residence, is locked up, and on audible knocking, no one answers, or the party has changed his former residence, or removed to the country, no notice is necessary. 9 Wheat. 599; 2

Peters 102, 105, 129 ; 6 D. & R. 505; 20 J. R. 172 ; and cases cited.

Where the parties do not reside in the same place, diligence consists in sending notice by the first mail, of the day of protest. 2 Wheat. 273 ; 9 Peters 45. This is all that is necessary, if the letter containing the notice is properly directed. 4 Wheat. 438. If the residence of the party appears on the bill, the notice of protest, &c., must be directed there ; 12 East 433 ; if it does not so appear, then reasonable diligence must be used, in making inquiry for his residence, and a reasonable time will be allowed to give notice after ascertaining it : this has been held in case of notice to an indorsee in April, of a protest in October preceding. Wyghtwick's Ex. 76, 77.

When all the facts are ascertained, diligence is a question of law. Wyghtwick 76 ; 1 Peters 583. If the evidence is doubtful or contradictory, it is for the jury to decide ; 7 Peters 290: but in either case, it turns on what is the usage of the place, (9 Wheat. 587) the habits of men of business, the kind and mode of inquiry usually made in similar cases. 2 Burr. 669 ; 2 H. Bl. 565; 3 B. & P. 601 ; 20 J. R. 174.

Thus a bill drawn by persons residing in Petersburgh, Virginia, on a house in New York, and dated there, being protested ; a clerk of the notary made inquiry at the banks and elsewhere, and on being informed that the drawers resided at Norfolk, directed one notice to them, there, and put another into the postoffice, in New York, directed to them there ; it was held sufficient. 1 J. R. 294, 296 ; Chapman v. Lippincott and Purcell, cited, 13 J. R. 433 ; 16 J. R. 220 ; 20 J. R. 174.

If a bill is drawn, dated " Manchester" (or " London"), without any other direction, notice of protest, directed to the drawer at Manchester, was held good, on the presumption that it would reach him if so directed. 1 R. & M. 249, 250. Notice directed to the residence or house of business of the party, is sufficient; the holder is not bound to show that notice is brought home, but only to employ the usual mode of conveyance ; and the rules of diligence to which he is held, ought not to be such as will tend to clog the circulation of commercial or negotiable paper, by impairing the liability of those who have put it into circulation. 1 Peters 583 ; 2 Peters 102, 129. If an indorsee lives within a reasonable distance of a postoffice, notice to him, directed to him, at his residence, is good : as where

a note was protested at Cincinnati, the notice was directed to T. D. C., Campbell county, Kentucky, though defendant lived on the south side of the Ohio, two miles from Cincinnati, and Covington, and three miles from Newport, the county town; in all of which there were postoffices, and his residence was well known to the holder and postmaster. The putting the notice into the postoffice, at Cincinnati, was held sufficient. 2 Peters 549.

The clear and conclusive result of these cases is, that as between the holder and the drawer or indorser of a dishonoured bill, the question of their liability depends not on actual notice, but on seasonable diligence, which is in all cases tantamount to actual notice, whether given or not. Hence, it becomes useless to examine into the instructions prayed for by the defendant at the trial, and refused by the court, in relation to the course of the mail after leaving New Orleans, or the points submitted to the jury; for they could in no event avail the defendant, if the jury believed the evidence of the notary. As these were foreign bills, the protests produced at the trial were in themselves evidence of the demand and protest. 8 Wheat. 330. The oath of the notary, that he put the notice into the postoffice, on the day of protest, is competent and sufficient in law to prove the fact: the only question for the jury was his credibility. The notices were properly directed: 1. Because Hazelwood was the residence of the defendant, within a short distance of a postoffice; 2. The bills were dated at that place, and the direction of the notices was to the same place.

As a matter of law then, we are clearly of opinion, that due diligence was used by the plaintiff, when the notices of protest were put into the postoffice, at New Orleans. His right of action was then consummated, and it can in nowise be affected by the course of the mail, or the arrangements concerning its route or distribution. We forbear any notice of the other questions presented at the trial, lest by doing so, we should, by implication, be deemed to think they could in any event affect the right of the plaintiff, when no laches could be imputed to him or the notary.

The judgment of the circuit court is affirmed with costs and interest.