# Wilkins *v.* The Commercial Bank of Natchez.

Where A had been in the regular habit of receiving at the post office all communica·
tions addressed to B, and taking them to his own office, where B called regularly to
receive them, and the authority of A had always been acquiesced in; who had some-
times opened and attended to the communications of B, and had occasionally receiv-
ed notices of protest, and handed them over to B; it was held, that proof of notice of
protest left with A would be sufficient to charge B, although A could not state that
he received and delivered such notice, but declared that if it had been left with him,
he delivered it to **B.**

The question as to whether an implied agency exists, is a matter of fact to be deter-
mined by a jury.

IN ERROR from the circuit court of the county of Adams.

The plaintiff in error was sued in this action as indorser of a
promissory note made by Andrew Brown; and, verdict and judg-
ment having been rendered against him in the court below, he has
brought the case up by writ of error.   The sufficiency of the no-
tice to charge him as indorser, was the only question which was
made in the case.   The bill of exceptions was taken on the over-
ruling of a motion for a new trial, and contains a statement of the
evidence, the substance of which is as follows, to wit:

The plaintiff first introduced the note, and then the notarial re-
cord, or written statement of the notary who protested it.   The
notary therein certified that he delivered the notice to the plaintiff
in error, to F. B. Ernest, his agent, or, in the language of the re-
cord, "with F. B. Ernest, his agent;" and then introduced Ernest as
a witness, who testified that he had a general power of attorney
from Wilkins to transact all business, given early in 1838, when
Col. Wilkins was about leaving the state, which he had thought
authorized him to act until revoked; but after Col. Wilkins return-
ed, he, the witness, had drawn checks on the Agricultural and on

19*

the Commercial Bank, and both banks refused payment, on the ground that his authority had expired; and on examining the power of attorney, it was found that it only authorized him to act during Wilkins's absence. The witness stated that he had never had any other general power, either written or verbal, but had been repeatedly authorized to transact specific business for the plaintiff in error—such as transferring stocks and selling lands. The witness had a box at the post office, in which he directed Col. Wilkins's papers and letters to be deposited, and he was in the habit of taking them to his office, where they were deposited on a rack, and Col. Wilkins was in the habit of calling or · sending for them; and that all letters left at his office for Col. Wilkins, were deposited and delivered in the same manner, who always recognized his, the witness', authority to receive and take charge of his letters, but he never was authorized to open letters addressed to Wilkins, and never did so except in one or two instances, when he had deposited notes in bank for collection and anticipated notices of protest. He had frequently seen printed tickets, or letters having the external appearance of notices of protest, addressed to Col. Wilkins, left at his office, which had been brought from the post office, but knew nothing of the contents. and has no knowledge of the notice in this case; that, if the notice was delivered to him or left at his office, he delivered it to Col. Wilkins when he called or sent for it. The power of attorney was then introduced by the defendant, to which the plaintiffs objected, because they did not rely on that to establish the agency of Ernest; but it was admitted; and on this evidence the jury found a verdict for the plaintiffs below.

Montgomery & Boyd for plaintiffs in error.

The language of the written power of attorney is free from ambiguity, and cannot be considered as conferring any authority whatever on Mr. Ernest after Col. Wilkins returned to the state; which Mr. Ernest states in his evidence was in the fall of 1838. The language of the power is "to act for me during my absence from the state aforesaid, from the date of these presents." The plaintiffs below not only had notice of this limitation to Mr.

Ernest's authority, but as early as the fall of 1838 admonished him that his powers had expired, by refusing to pay a check drawn under it.

This note was protested 18th January, 1840. If the power of attorney did not authorize the service of notice by leaving it with Mr. Ernest, are there any other circumstances in the case which would render such service binding on Col. Wilkins?

Mr. Ernest expressly denies all authority to receive and read Col. Wilkins's letters; and the few cases in which he admits he took that liberty, will not imply an authority, as it does not appear whether Col. Wilkins even knew it. And even if he did know and approve of the conduct of Mr. Ernest on those occasions, it would not amount to a general recognition of his authority to open his letters; because those cases were peculiar, and a special agency had been created by giving Ernest the notes to deposit for payment, which would imply an authority to examine the notices of protest in those peculiar cases.

If Ernest had no general authority to open Col. Wilkins's letters, or to transact his business relating to promissory notes and indorsements, then giving him the notice can have no other effect than it would have had if given to any other person who would promise to hand it to Col. Wilkins. The proof should have followed up the notice, and shown that Col. Wilkins did receive it in due time. The evidence of Mr. Ernest on this point is too vague and uncertain. He might have delivered it the same day it was left at his office, and he might not have delivered it for several days. This is too vague and indefinite to fix the liability of an indorser.

The circumstance that Mr. Ernest was in the habit of receiving Col. Wilkins's letters, &c. at the post office, and keeping them at his office until called or sent for by Col. Wilkins, will not authorize a deposite of the notice either in the post office or at the office of Mr. Ernest. It appears from the notarial record that Col. Wilkins resided in the city; and in such case, the notice should have been at his residence. Johns. Rep., 2 Peters' Rep. 96; Chitty on Bills.

McDaniel contra.

An agent may by a verbal authority, or, by a mere implied authority, sign or indorse promissory notes for another, and is clothed with such power as is necessary to carry into effect the object for which the power was given. Story on Agency, pp. 51, 56, 58, 59, 60, 70, (lower part,) 79, 90, 91, 92, 93; Livermore on Agency, 103, 104; Paley on Agency, 3d ed. 198, note. What is a general agent? Story on Agency, 20. Notice to an agent is notice to his principal. 4 Kent's Com. 179.

Mr. Chief Justice SHARKEY stated the case, and delivered the opinion of the court.

It is not pretended in the argument that the notice was left with Ernest in consequence of his authority under the power of attorney, but under a general implied authority to act as Col. Wilkins's agent. The authority of Ernest had, by the very terms of the power, expired by Col. Wilkins's return to the state, and the plaintiffs below had, on this ground, refused to pay a check drawn by him. Of course they were aware of the extent of his power; and, with a knowledge that it had expired, they could not now, with any propriety, claim to have acted under it. Col. Wilkins had returned to the state before the note sued on was protested, and thus the written authority had expired before the service of the notice. The case must then turn on the implied authority of Ernest, as the agent of Wilkins.

There is a vagueness in the evidence in this case which renders it difficult to determine it by adjudged cases. We are not informed by the record whether Col. Wilkins lived in town or country, or whether he had a place of business in the city. The whole question, too, comes up after a jury has passed upon it without any charge as to the law. It must be admitted that notices left with an agent appointed for that purpose, will operate to charge the principal; and agents may also legally act under an implied power. The question of sufficiency of notice is said to be a mixed question of law and of fact; the facts being found, it is with the law to pronounce on the sufficiency of the notice. It seems that Ernest was in the habit of receiving all communications addressed to Col. Wilkins, who was in the habit of calling at his office or sending

for them. Ernest even occasionally took the liberty of opening letters; and he says that his authority to receive them never had been questioned. He says, too, that he had frequently received notices of this description for Col. Wilkins, amongst other letters. It seems, then, that there was an acquiescence in his conduct; and he moreover states that he was in the constant habit of delivering whatever letters he received for Wilkins. So far as a tacit agency could exist, it was certainly and fully shown in this case. The witness, it is true, says, he had no express authority for this purpose; but a general implied authority may be as extensive and binding on the principal as if it had been written. Presumed or implied authority is not confined to an agency of any particular description, nor to any particular subject; but it is a general principle of the law, applicable in all such business as is commonly transacted through an agent. It arises from previous employment in similar cases, and from the subsequent assent or acquiescence of the principal, and slight circumstances may often be regarded as evidence of such assent. Paley on Agency, 143. These agencies, like a power conferred in writing, are to be construed and limited by the nature of the business in which the agent has been employed. Thus it seems that Ernest's agency for the receipt of letters and notices had never been questioned, and for this purpose his agency is to be implied, if it existed at all. This seems to have been the subject of his agency, and, having been trusted for this purpose, his acts are to be regarded as binding, for it may be presumed in such cases that the proper information has been imparted to the principal. Story on Agency, §140.

The sufficiency of the notice in this case is peculiarly a question of law and of fact. A notice left with an agent appointed for that purpose, or one who has an implied authority, is sufficient; but whether Ernest was such an agent, was a question of fact for the jury. This question of agency must have been considered by the jury, otherwise there was no foundation for their verdict. The evidence is strong to establish the fact. Ernest had received a general power of attorney in writing. He had been in the habit of receiving all communications addressed to Col. Wilkins, and handing them over, notices of protest as well as letters and papers. Col. Wilkins had never disputed his authority, but always acqui-

esced in his acts. He even on some occasions opened notices, and was constantly in the habit of delivering such as were left at his office addressed to Col. Wilkins. There is, therefore, every probability that this notice was delivered. It was proper for the jury to judge of the weight of this testimony, and, although we may entertain doubts as to its sufficiency, we cannot, for this reason merely, interfere with the verdict.

The case of the Bank of the United States *v*. Corcoran, 2 Pet. 131, is in some respects like the present. The analogy, however, fails in this: Corcoran had, some time before the protest, taken charge of the post office, which afterwards became his known place of business, and after that time the implied agency of his son had ceased. The son was not afterwards in the habit of receiving communications addressed to his father, but all such were left at the post office. Ernest continued to receive and forward all communications, and we are not informed whether Col. Wilkins resided in, or had a place of business in the city; and as we consider ourselves concluded on the question of agency, by the verdict of the jury, found on evidence conducing strongly to establish that fact, the judgment must be affirmed.