MERCHANTS BANK AND TRUST COMPANY OF WINSTON-SALEM, NORTH CAROLINA, v. T. W. WATSON, TRUSTEE, AND THE WACHOVIA BANK AND TRUST COMPANY, ADMR. OF R. E. MATTHEWS, DECEASED.

(Filed 22 January, 1924.)

1. **Municipal Corporations—Cities and Towns—Street Improvements—Assessments—Statutes—Liens.**

The amount of an assessment on the owner of land lying along a street for street improvements is by statute (chapter 56, section 9, Public Laws 1915), creating a lien superior to all other liens and encumbrances and continuing, until paid, against the title of successive owners thereof.

2. **Same—Mortgages—Foreclosures—Title—Contracts.**

In order for a purchaser at a foreclosure sale of land to acquire the title to the mortgagor's equity of redemption, free from liens on the land, it is not alone sufficient that in making his successful bid and in paying the purchase price he intended to so acquire it, but it is necessary that the minds of the parties come to an agreement thereon, as in case of a binding contract.

3. **Same—Purchase Money.**

Where land is sold by foreclosure proceedings under a mortgage, subject to a valid lien in favor of a city, for street improvements, the lien continues upon the land and does not attach to the purchase money paid.

APPEAL by plaintiff from *Shaw, J.,* at February Term, 1923, of FORSYTH.

Civil action. This was an action brought by the plaintiff against the defendants to recover $747.72 and interest.

B. C. Patton owned a piece of land in Winston-Salem, on East Fifth Street and Woodland Avenue. The city of Winston-Salem, by virtue of chapter 56, section 9, Public Laws 1915, known as "An act relating to local improvements in municipalities," which, among other things, provides as follows: "Whenever the governing body shall confirm an assessment for a local improvement, the clerk of the municipality shall enter on the minutes of the governing body the date, hour and minute of such confirmation, and from the time of such confirmation the assessment embraced in the assessment roll shall be a lien on the real property against which the same are assessed, superior to all other liens and encumbrances." Under said act, the city of Winston-Salem paved the streets contiguous to Patton's property. The pavement for which the assessment was levied was laid in December, 1919, and was due and payable in ten equal installments, beginning 1 January, 1921; the amount of the assessment on East Fifth Street was $444.15, and that on Woodland Avenue $251.77. At the time of the foreclosure sale, hereinafter mentioned, only one of these annual installments was due and payable. Patton sold the property to John Gregory; he sold the property to

S. W. Kagor, who sold the property to R. E. Matthews. Each purchaser assumed the assessments in his deed, the amount due the city of Winston-Salem for the street improvement. B. C. Patton executed a deed in trust to the defendant T. W. Watson to secure the Winston-Salem Building and Loan Association. When Matthews bought the property, the deed in trust to T. W. Watson, trustee for the building and loan association, was on the property.

R. E. Matthews resided on the property in question, at the corner of East Fifth Street and Woodland Avenue. The plaintiff became interested in the property by reason of the fact that it had loaned Matthews some money, and, finding that he was in failing circumstances, it took a judgment against him on 13 September, 1920, for $2,916.11, with interest on $2,863.13 from 13 September, 1920, and court cost, $7.30, which judgment was duly docketed on said date in Book 26, page 118, office of the clerk of the Superior Court of Forsyth County, and became a lien upon said property from said date. At the time the judgment was taken, the lien of the city of Winston-Salem was on said property for bitulithic assessments amounting to $781.62 and interest, and the deed of trust to T. W. Watson, trustee, for the building and loan association, for $ ........ On 14 October, 1920, the said R. E. Matthews died, and on 1 December, 1920, the Wachovia Bank and Trust Company qualified as his administrator. On 3 December, 1920, the plaintiff filed his proof of debt of judgment lien, as aforesaid, with said administrator. Thereafter, the defendant trustee advertised the property for sale on 19 May, 1921. The plaintiff appeared at the sale and bid on the property $4,035, thinking that was all it was worth, and which would be the approximate sum necessary to pay the bitulithic assessment and the mortgage debt and cost of sale. The plaintiff paid to the trustee, in all good faith, the sum of $4,035. T. W. Watson, the trustee, went to the city tax collector's office and inquired for assessment against R. E. Matthews, and was told there was none. This was an error on the part of the city tax collector, or in the way in which the book of bitulithic assessments is kept, showing only the name of the owner at the time the assessment was levied, which was the name of B. C. Patton. The said defendant trustee kept the money for some days, and finally paid the same into the office of the clerk of the Superior Court—that is, the balance, after paying mortgage debt, cost and taxes, which balance was $747.72. In a few days, however, the said trustee discovered that there was a lien against the property, and went over and informed the clerk to this effect, and tried to get the money back, but the clerk thought that, inasmuch as the amount had been entered on the books, it ought to go to the administrator. The clerk paid the money in his hands to the defendant, the Wachovia Bank and Trust Company, administrator of R. E. Matthews.

The plaintiff prayed judgment directing a return of this money to the trustee and its payment to the city of Winston-Salem, for cost, and for such other and further relief as may be just and proper.

T. W. Watson, trustee, in his answer, admits the advertisement and the sale of the property, as alleged, but denies that there was any agreement that the purchase money paid to him was to be used to discharge the lien of the bitulithic assessment, and he likewise denies any knowledge of any such purpose on the part of the plaintiff. He admits that inquiry was made of the city tax collector with respect to said assessment, but that such inquiry was made after the sale and after the payment of the money. He denies that he told the administrator that the money ought to be applied on the bitulithic assessment and should not be in the hands of the administrator.

The Wachovia Bank and Trust Company, in its answer, says:

1. It admits the allegations with respect to the death of Matthews and its qualification as administrator, and that plaintiff filed his proof of debt with said administrator at the time alleged. It is admitted that the sum of $747.72 was paid to it by the clerk of the court. It is denied that T. W. Watson, trustee, told it that the money ought not to be in its hands as administrator, but should be applied on the bitulithic assessment.

The indebtedness of R. E. Matthews' estate was about $25,000, but a large part has been eliminated by foreclosure proceedings. The amount of unsecured claims will be about $12,000 to $15,000. The administrator has in hand funds of the estate amounting to $1,191.32. The estate is insolvent.

In the county court Thomas W. Maslin, president of the plaintiff bank, testified, in part: "I attended the sale of this property by Mr. Watson, trustee for building and loan, and I bid up to $4,035, and R. E. Matthews bid $4,050, and it was knocked off to him. That night Mr. Watson stated to me that he had accepted my bid instead of Matthews', I being the next highest bidder to Matthews and the highest bidder having fallen out; and subsequently I paid Mr. Watson $4,035. In paying that amount I intended it to be applied according to the way I had figured up, which included building and loan debt, State and county taxes, bitulithic assessment, trustee's commissions, advertising, auctioneer's fees, and all those incidentals that go in to make a sale, in order that the bank could get a clear title. Some time after that, the city tax collector sent us a bill for the bitulithic assessment on this property, which bill has not to this date been paid; and then I began investigating to ascertain what had been done with the money which the bank paid for the purpose of applying it to the payment of the bitulithic assessment as well as other debts, and I found that the trustee

had paid the money into the office of the clerk of the Superior Court, and the clerk had turned it over to the Wachovia Bank and Trust Company, administrator of R. E. Matthews; and I found that the administrator was holding the money for the purpose of paying the debts of the estate, particularly the undertaker's claim, and the administrator was seeking instructions from the court about paying out the money. I tried to get this money applied on the bitulithic assessment, and when I was unable to do so, this suit was instituted. The bank has never been able to get anything on its judgment. The judgment was filed with the administrator."

On cross-examination he testified: "When we paid the money representing the amount of our bid to Mr. Watson, trustee, I did not say anything to him about how we expected it to be used; and while I say I paid it to him with that intention and purpose of having it used in a certain way, I did not disclose to him that intention or purpose. I had been advised of the existence of this lien for bitulithic before the sale of the property by the trustee, and the amount of my bid, $4,035, was sufficient to take care of the building and loan, bitulithic, State and county taxes, commissions, advertising, auctioneer's fees, and clear the title to the property of those liens. The bank loaned R. E. Matthews money to make his first payment on some real estate, for which he executed his note, and that note was reduced to judgment, and the bank filed with the administrator proof of that debt by the judgment. That proof of debt was filed 3 December."

T. W. Watson, trustee, testified, in part: "I was trustee in the deed of trust from Gregory (Patton) to Winston-Salem Building and Loan Association. I put the property up and sold it to Mr. Maslin, and he paid me $4,035. Then I went about to apply the money, and I paid the debt of the building and loan, city and county taxes, and trustee's commissions, also advertising, auctioneer's fees, and all of the incidental expenses. The counsel for Merchants Bank and Trust Company told me that there was a bitulithic assessment against this property, and he reported there was not any against Matthews or Gregory. Then I paid the money into the clerk's office, or possibly I paid the money into the clerk's office before I asked as to the assessment against Matthews. I do not recall now. After I found out this assessment was against the property, being assessed in the name of Patton, I came over and informed the clerk about that."

It was agreed that Thomas Maslin made the purchase at the trustee's sale as trustee for the Merchants Bank and Trust Company, and deed was executed to him in his name; Mr. Maslin, in fact, acting for the bank in the transaction.

The case was first heard in the County Court of Forsyth County, before Judge H. R. Starbuck and a jury, at October 16th Term, 1922.

At the close of plaintiff's evidence the defendant moved for judgment as of nonsuit, which motion was sustained, and the plaintiff excepted.

The case was heard on appeal before Shaw, J., and the judgment of the Forsyth County Court was affirmed. The plaintiff excepted and appealed to the Supreme Court, and assigned as error:

"For that the court, at the conclusion of plaintiff's testimony, allowed defendants' motion for judgment as of nonsuit." .

*J. E. Alexander for plaintiff.*
*Manly, Hendren & Womble for defendants.*

CLARKSON, J. On all the evidence, Thomas Maslin, the agent of plaintiff, when he had calculated the entire indebtedness of R. E. Matthews, which was a lien on the property, bid at the sale $4,035, the amount of the indebtedness, and he in good faith thought that he was getting a clear title. If he at the time of the sale had had an understanding and agreement, and it was so announced at the sale by T. W. Watson, trustee, that the highest bidder was to get a clear title, free from encumbrances, and he bid $4,035 with that understanding and agreement with the defendant Watson, then there would be no doubt that Watson, the trustee, would have to pay off the liens, including the street assessment.

Mr. Maslin, president of the plaintiff bank, in his testimony says: "I paid Mr. Watson $4,035. In paying that amount, I intended it to be applied according to the way I had figured up, which included building and loan debt, State and county taxes, bitulithic assessment, trustee's commissions, advertising, auctioneer's fees, and all those incidentals that go in to make a sale." Then again he said: "When we paid the money representing the amount of our bid to Mr. Watson, trustee, I did not say anything to him about how we expected it to be used; and while I say I paid it to him with that intention and purpose of having it used in a certain way, I did not disclose to him that intention or purpose." From the evidence, the minds of Mr. Maslin and Mr. Watson did not meet, and there was no contract. *Overall Co. v. Holmes,* 186 N. C., p. 428.

Under the statute (chapter 56, section 9, Public Laws 1915) the street assessment, "From the time of such confirmation, the assessment embraced in the assignment roll *shall be a lien on the real property against which the same are assessed, superior to all other liens and encumbrances." Kinston v. R. R.,* 183 N. C., 14.

The statute says that the street assessment "shall be a lien on the real property." T. W. Watson, trustee for the Winston-Salem Building and

Loan Association, sold the land that R. E. Matthews had an equity of redemption in, under the terms of the deed in trust. It was purchased by Mr. Maslin, agent for plaintiff, for $4,035. When sold, no agreement was made to pay out of the purchase money the street assessment, a superior first lien and statutory charge on the land. Under the law, nothing else appearing, the land was sold subject to the street assessment. The trustee, after paying the building and loan debt and other legal expenses and encumbrances, paid the surplus into the office of the clerk of the Superior Court for Forsyth County. (C. S., 2892.)

In *Barrett v. Barnes,* 186 N. C., p. 154, it was said: " 'A mortgagee who sells under the mortgage is not liable to a subsequent mortgagee or judgment creditor for the surplus unless he has *actual notice* thereof.' (Italics ours.) *Norman v. Hallsey,* 132 N. C., 6. 'A sale of land under an execution on a junior judgment passes the title to the purchaser encumbered with the lien of prior docketed judgments; but where the sale is made upon execution on the senior judgment the title passes to the purchaser unencumbered; and the lien of any junior docketed judgments is transferred to the fund arising from the sale; and it is the duty of the officer making the sale to apply it to the satisfaction of the several judgments in the order of their priority, whether he has executions in his hands or not.' *Gambrill v. Wilcox,* 111 N. C., 42. *Clark, C. J.,* in *Gammon v. Johnson,* 126 N. C., 64, says: 'In general, all encumbrances, whether prior or subsequent encumbrances, as well as the mortgagor, should be parties to a proceeding for foreclosure, *and judgment creditors as well as mortgagees.*' (Italics ours.) *Jones v. Williams,* 155 N. C., 179, is not in conflict, under the facts in this case."

"Where the sale is made on foreclosure of a junior mortgage or trust deed, the purchaser does not acquire an absolute title, but only the mortgagor's equity of redemption—that is, he takes subject to the elder lien. But, on the other hand, the foreclosure of a senior mortgage will cut off junior liens or encumbrances." 27 Cyc., p. 1491; *Bobbitt v. Stanton,* 120 N. C., 253.

We think that the assumption of the street assessment—statutory lien on the land—by R. E. Matthews, a subsequent purchaser of the land, created an obligation on the part of Matthews to pay it. He agreed to pay it, and it was a valid claim against him. *Baber v. Hanie,* 163 N. C., 588; *Parlier v. Miller,* 186 N. C., p. 501. This principle does not apply in this case. The property in question was sold subject to the street assessment. It was not sold otherwise. The city's lien still attaches to the property and not to the funds derived from a sale under the deed of trust. Hence the purchaser of the property should pay the city's claim, and not the estate of R. E. Matthews, deceased.

True, Matthews agreed with his grantor to assume and to pay off this street assessment. But the specific property upon which the city still has a lien was sold subject to the city's claim. The purchaser, therefore, is liable for the assessment, or rather the property in the hands of the purchaser. The obligation of Matthews to pay the assessment was passed on to the purchaser when the property was sold subject to the lien.

The judgment of nonsuit is
Affirmed.