S. M. DAVIS AND WIFE, FLORA M. DAVIS, v. UNION CENTRAL LIFE INSURANCE COMPANY ET AL.

(Filed 30 October, 1929.)

1. **Mortgages E a—The assignee of the mortgagee may enforce the mortgage security.**

   The one who is the last and highest bidder at the foreclosure of a mortgage or deed of trust on lands is but a proposed purchaser within the ten days before confirmation, C. S., 2591, and where the mortgagee has become such purchaser and within ten days allowed by statute for an increase bid a third person pays the mortgage debt and has the notes and mortgage assigned to him, such person has the right of lien and foreclosure under the terms of the mortgage securing the note.

2. **Mortgages H q—Refusal to continue action for junior lien holders to be made parties not erroneous where their interests protected by the decree.**

   Where the decree of foreclosure of a mortgage has been made by the court with the provision that all junior lien holders be notified of the

time and place of the sale and to show cause at the next succeeding term why they should not be bound by the decree and sale, their rights are protected by the decree and the refusal of the court to continue the action for foreclosure so that they might be made parties is not held for error under the facts of this case.

CIVIL ACTION, before *Cranmer, J.*, at April Term, 1929, of BLADEN.

The record discloses that prior to 26 March, 1921, the plaintiffs, S. M. Davis and wife, owned a tract of land in Bladen County, containing about 501½ acres, and that on said date plaintiffs borrowed from the defendant, Union Central Life Insurance Company, the sum of $10,000, evidencing said indebtedness by notes secured by a deed of trust upon said land, to the defendant, Louis Breiling, trustee, which deed of trust was duly recorded in the office of the register of deeds of Bladen County. Having failed to make the payments due in 1926 and 1927, the plaintiffs borrowed from the National Bank of Fayetteville a certain sum of money and issued as evidence thereof a promissory note and secured the same by a second mortgage or deed of trust upon said property to A. B. McMillan, trustee for the National Bank of Fayetteville. Thereupon the National Bank of Fayetteville delivered to the defendant, Union Central Life Insurance Co., its certificate of deposit, payable 1 November, 1927, in the sum of $1,848. Thereafter, on 8 August, 1927, the National Bank of Fayetteville closed its doors by reason of insolvency and the Union Central Life Insurance Company could not collect the deposit of $1,848.58. Thereupon the Union Central Life Insurance Company directed Louis Breiling, trustee in the first deed of trust, to advertise and sell plaintiff's property. The land was accordingly advertised for sale on Wednesday, 14 December, 1927. Plaintiffs instituted an action on 12 December, 1927, against the Union Central Life Insurance Company and Louis Breiling, trustee, to restrain the sale of said property, alleging that the defendant, Union Central Life Insurance Company, had accepted the deposit of the National Bank of Fayetteville as a payment of the amount due by the plaintiffs according to the tenor of the notes. The Union Central Life Insurance Company contended that it had accepted deposit from the National Bank of Fayetteville as collateral security and not as payment. The controversy was heard by Sinclair, J., on 31 December, 1927, and a consent judgment was entered to the effect "that the defendant, Union Central Life Insurance Company, and its trustee, Louis Breiling, be and they are hereby restrained from exercising power of sale in the deed of trust referred to in the pleadings until 1 March, 1928." The judgment further provided that if the indebtedness was not paid on or before 1 March, 1928, that the power of sale should be exercised.

No further steps were taken in the matter until Louis Breiling, trustee, readvertised the property for sale on 29 October, 1928. The property was sold on said date and "was bid in by the Union Central Life Insurance Company for $10,000." On 8 November, 1928, and prior to the expiration of the ten days allowed by law, the LaFayette Bank and Trust Company, of Fayetteville, sent to Johnson-Johnson & Floyd, attorneys for Union Central Life Insurance Company, a check for $12,983.65, which was the amount of the indebtedness due the Union Central Life Insurance Company. Thereafter Johnson-Johnson & Floyd, attorneys, sent to the LaFayette Bank and Trust Company the notes and deed of trust held by the Union Central Life Insurance Company, said deed of trust bearing the following endorsement: "For value received and without recourse on us this deed of trust and the notes secured by the same are hereby transferred and assigned to D. U. Sandlin, trustee for the LaFayette Bank and Trust Company, together with all our right, title and interest in the same. This 17 November, 1928. Union Central Life Insurance Company, by Johnson-Johnson & Floyd, attorneys." The money sent by LaFayette Bank and Trust Company to Johnson-Johnson & Floyd was by them forwarded to the Union Central Life Insurance Company and retained by said company. Subsequently, on 29 December, 1928, the LaFayette Bank and Trust Company and D. E. Sandlin, trustee, upon notice and order of the court, were permitted to interplead in the action then pending between Davis and wife and the Union Central Life Insurance Company and Louis Breiling, trustee. The receivers of the National Bank of Fayetteville also filed answers, alleging in substance that the LaFayette Bank and Trust Company had paid off the mortgage of Union Central Life Insurance Company at the instance of plaintiff Davis, and that as a result thereof the second mortgage or deed of trust held by the National Bank of Fayetteville constituted the first lien upon the land of the plaintiff.

The cause came on for hearing, and the following issues were submitted to the jury:

"1. Were the notes and deed of trust securing the same transferred and assigned to the LaFayette Bank and Trust Company and D. E. Sandlin, trustee, as alleged?

"2. Has the mortgage indebtedness been paid?"

The trial judge instructed the jury to answer the first issue "yes," and the second issue "no." Judgment was signed, decreeing that the plaintiffs were indebted to the LaFayette Bank and Trust Company in the sum of $12,983.65, with interest from and after 8 November, 1928.

It was further ordered that in the event said amount was not paid by 10 June, 1929, the land should be sold, and commissioners were appointed to make the sale.

It was further ordered that all junior lien holders or judgment creditors of plaintiffs should be notified of the time and place of the sale, and further to show cause at the next term of court held after the sale why each of said junior lien holders or judgment creditors should not be bound by the terms of the decree and the sale had thereunder. .

From the foregoing judgment the receivers of the National Bank of Fayetteville appealed.

*Rose & Lyon* for LaFayette Bank and Trust Company and D. E. Sandlin, Trustee, interpleaders.
*R. W. Herring* for A. D. Burrowes, receiver of the National Bank of Fayetteville.

BROGDEN, J. Two questions of law are presented for determination:

1. Can a third party purchase notes secured by deed of trust, after a sale of the property, under power contained in the deed of trust and within the period of ten days for increasing the bid, and thereafter enforce the security?

2. Was the receiver of the National Bank of Fayetteville entitled to a continuance of the cause for the purpose of permitting subsequent lien holders to be made parties to the suit?

The first question must be answered in the affirmative. The record discloses that the land was sold under the first deed of trust held by the Union Central Life Insurance Company on 29 October, 1928. Thereafter, on 8 November, 1928, the LaFayette Bank and Trust Company paid to the attorneys of the Union Central Life Insurance Company all sums due by virtue of the execution and delivery of the notes and deed of trust. Thereupon the attorneys for the lien holder assigned and delivered to the LaFayette Bank and Trust Company the notes and deed of trust evidencing the indebtedness and forwarded the money to the lien holder, and the money was retained without question.

Until the expiration of the ten days the Union Central Life Insurance Company, by virtue of having purchased the land at the sale, became "a mere preferred proposer until confirmation." *In re Sermon's Land,* 182 N. C., 122, 108 S. E., 497.

It has been expressly held by this Court in *Cherry v. Gilliam,* 195 N. C., 233, 141 S. E., 594, that a mortgagor can sell his interest in the mortgaged premises during the ten-day period described by C. S., 2591. If a purchaser of the land could acquire the title of the mortgagor during the ten-day period, by the same token a purchaser could acquire title to the notes and deed of trust held by the lien holder. Therefore, it necessarily follows that such purchaser of notes can enforce the security according to the tenor thereof.

Ordinarily, a continuance rests in the sound discretion of the trial judge. *Massey v. R. R.,* 169 N. C., 245, 84 S. E., 1047. Furthermore, subsequent lien holders or encumbrancers are proper parties to a suit of foreclosure—certainly if they seek to become parties, but they are not necessary parties in all cases. *Gammon v. Johnson,* 126 N. C., 64, 35 S. E., 185; *Barrett v. Barnes,* 186 N. C., 154, 119 S. E., 194; *Bank v. Watson,* 187 N. C., 107, 121 S. E., 181. However, in the present case it is provided in the judgment that the commissioner appointed to sell the property should notify all junior lien holders "to show cause before this court at the next term of court to be held after the sale, why each of said junior lien holders or judgment creditors should not be bound by the terms of this decree and sale, if any, to be held hereunder, as well as the price which may hereafter be offered for said property at public auction."

This decree, therefore, protected the rights of all parties concerned. The judgment is

Affirmed.