## CITY OF WINSTON–SALEM v. POWELL PAVING CO. OF NORTH CAROLINA, Inc., et al.

### No. 107.

District Court, M. D. North Carolina, Winston-Salem Division.

June 15, 1934.

Parrish & Deal, of Winston-Salem, N. C., for plaintiff.

Dennis G. Brummitt, Atty. Gen., and A. A. F. Seawell and T. W. Bruton, Asst. Attys. Gen., for the state of North Carolina.

J. R. McCrary, U. S. Atty., of Greensboro, N. C.

HAYES, District Judge.

This is a civil action commenced in the state court by the plaintiff against the Powell Paving Company and others for the sale of the property to satisfy street assessments, taxes due the city, state and federal governments, and other lienholders, and to establish the order of priority in the distribution of the proceeds of the sale. The cause was removed to this court at the instance of the United States, and answers were filed by the state of North Carolina and by the United States of America.

The facts were set out in a written stipulation, from which it appears that the Powell Paving Company was a corporation owning three lots of land in the city of Winston-Salem, the sale of which is asked in this suit.

Against one of these lots are two street assessments: Hawthorne Road street assessment, $454.26, date of lien, September 12, 1924; and an assessment on Angelo street, $661.96, date of lien, October 9, 1925. The other tax liens are as follows:

county on October 10, 1927, for the sum of $200, plus $70.85 cost. The validity of the liens is conceded, and the sole controversy is the order of priorities.

The tax lien of the United States is governed by the provisions of 26 USCA § 115.

| Claimant | Claim | Amount | Time lien attached |
|---|---|---|---|
| City of Winston Salem | Ad Valorem | | |
| City of Winston Salem | 1929 tax | $ 472.99 | June 1, 1929, all 3 lots |
| City of Winston Salem | 1930 tax | 614.27 | June 1, 1930, all 3 lots |
| City of Winston Salem | 1931 tax | 211.31 | July 1, 1931, all 3 lots |
| City of Winston Salem | 1932 tax | 157.34 | July 1, 1932, all 3 lots |
| City of Winston Salem | 1933 tax | 94.08 | July 1, 1933, all 3 lots |
| Forsyth County | 1930 tax | 325.14 | June 1, 1900, all 3 lots |
| Forsyth County | 1931 tax | 86.47 | July 1, 1931, all 3 lots |
| Forsyth County | 1932 tax | 55.50 | July 1, 1932, all 3 lots |
| Forsyth County | 1933 tax | 29.40 | July 1, 1933, all 3 lots |
| North Carolina State | 1928 income tax | 487.71 | March 15, 1929, all 3 lots |
| North Carolina State | 1929 income tax | 293.63 | March 15, 1930, all 3 lots |
| United States Government | 1926–27 add inc. tax | 5,431.22 | April 29, 1930, all 3 lots |
| United States Government | 1928–29 add inc. tax | 669.07 | May 27, 1930, all 3 lots |

It was agreed that Powell Paving Company was not in bankruptcy or in the hands of a receiver; that George Hiatt has a judgment of record, duly docketed in the office of the clerk of the superior court of Forsyth Rev. St. § 3186,[1] while liens of the state arose under North Carolina Code 1931, §§ 7880 (147), 7880 (150) and 7880 (174).[2] The ad valorem tax liens of the county and city arose under North Carolina Code 1931, § 7987,[3] and

[1] Rev. St. § 3186 (26 USCA § 115).
"(a) If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.
"(b) Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector."

[2] Section 7880(147). Consolidated Statutes of North Carolina provide that the return (income tax) shall be filed with the Commissioner of Revenue on or before the 15th day of March of each year.
Section 7880(150) provides that the full amount of the tax payable, as appears on the face of the return, shall be paid to the Commissioner of Revenue at the time fixed by law for filing of the return.
Section 7880(174) provides that "the taxes herein designated and levied shall be payable in the existing national currency. State, county, and municipal taxes levied for any and all purposes pursuant to this act shall be for the fiscal year in which they become due, except as otherwise provided, and the lien of such taxes shall attach to all real estate of the taxpayer within the State, which shall attach annually on the date that such taxes are due and payable, and shall continue until such taxes, with any interest, penalty, and costs which shall accrue thereon, shall be paid."

[3] Section 7987. "The lien of the State, County and Municipal taxes levied for any and all purposes in each year shall attach to all real estate of the taxpayer situated within the county or other municipality in which the tax list is made and placed in the hands of the duly authorized officer for collection, which lien shall attach on the first day of June, annually, and shall continue until such taxes, with any and all penalties and cost which shall accrue thereon, shall be paid, and which lien shall be preferred to any other lien upon the real estate of the taxpayer within the county, whether the same shall have attached prior or subsequent to the said first day of June; and which said lien shall be preferred to the inchoate right of dower of the wife of the taxpayer or to the curtesy initiate of the husband of the taxpayer."

the street assessment lien arose under North Carolina Code 1931, § 2713.[4]

The Supreme Court of North Carolina, in construing the statute creating the assessment lien, holds that a lien amounts to a statutory mortgage, having preference over any and all liens and incumbrances, existent or otherwise, and to be enforced by a decree of sale of the property. Kinston v. Railroad, 183 N. C. 14, 24, 110 S. E. 645. It is an incumbrance within the meaning of the warranty clause against incumbrances. Coble v. Dick, 194 N. C. 732, 140 S. E. 745. It is a lien superior to all other liens and incumbrances continuing, until paid, against the title of successive owners, Merchants' Bank, etc., v. Watson, 187 N. C. 107, 121 S. E. 181. It is a lien against the land and not a debt against the owner, and cannot be proved against his estate. Carawan v. Barnett, 197 N. C. 511, 149 S. E. 740.

When street improvement is made, the city, in effect, lends the property owner the money necessary to pay his part of the improvement, while the city, in turn, sells its credit to obtain the fund for the improvement. It was the manifest purpose of the Legislature to give these claims for street improvement priority over all liens, and the Supreme Court of the state has been liberal in the construction of the statute to the end that the intended priority shall be given its proper force and effect. While there are decisions from other states to the contrary, the law in this state is well settled that such a claim is entitled to priority over subsequent liens. North Carolina Code 1931, § 7987, quoted in the margin, gives a lien to the state and county for ad valorem taxes against all real estate of the taxpayer within the county, and the same is preferred to any other liens upon the real estate of the taxpayer within the county, "whether the same shall have attached prior or subsequent to the said first day of June." It is from these taxes that the municipality and the county must depend for the expense of maintaining their governments. Persons who hold liens of any character against real estate hold them subject to a lien of the city and county for the ad valorem taxes. The fact that a lien may exist against the property should not, and does not, operate to remove such property from an ad valorem tax levied annually for the purpose of obtaining revenue to operate the city and county governments. Governments cannot exist or be maintained without revenue.

The legislative policy in this state manifested an intention on the part of the state to abandon ad valorem taxes in order that the counties and municipalities may have that revenue for the purpose of operating these governments.

The court has been unable to find any decision in North Carolina which has passed on the question of priority of a tax for street assessment over a lien of ad valorem taxes due to the municipality or county. A comparison of North Carolina Code 1931, § 7987, and North Carolina Code 1931, § 2713, indicates the intention of the Legislature to give the ad valorem tax liens preference over any other liens, whether the same shall have attached prior or subsequent to the 1st day of June of the taxable year. The lien for street assessment, while superior to all other liens, whether existent or otherwise, does not defeat the right of the municipality or county to collect the annual ad valorem general taxes accruing on the same property. Both sections should be construed in such way as to effectuate the intention of the Legislature. It is manifestly the intention of the Legislature that the general ad valorem tax shall accrue annually, and shall constitute a prior lien to any other lien, whether the same attaches prior or subsequent to the 1st day of June in each year. The Legislature, recognizing that annual ad valorem taxes constitute the principal source of revenue for the operation of municipal and county governments, decided that a lien for this purpose should take priority over any other lien, which, of course, in its proper interpretation, means preference over a special tax, such as street assessment. The lien for street assessment is superior to all other liens except the annual general property tax. This construction gives force and effect to both statutes in accordance with the rule of statutory construction enunciated by the Supreme Court of North Carolina in Propst v. Railroad, 139 N. C. page 397 at page 401, 51 S. E. 920.

There is no state annual ad valorem tax involved in this suit. The state taxes which

---

4 Section 2713. "Whenever the governing body shall confirm an assessment for a local improvement, the clerk of the municipality shall enter on the minutes of the governing body the date, hour, and minute of such confirmation, and from the time of such confirmation the assessments embraced in the assessment roll shall be a lien on the real property against which the same are assessed, superior to all other liens and encumbrances."

are involved are state income taxes. Therefore, the general taxes of the city and county, from 1929 to 1932, inclusive, are entitled to priority over all other liens, and the street assessments for 1924 and 1925 have priority over any of the other liens, except the general taxes. The state and federal tax liens attach in the order of their priority as set forth in the stipulated facts, to wit: State income tax for 1928 attached March 15, 1929; for 1929, March 15, 1930; the income tax due the United States 1926-27, attached April 29, 1930; for 1928-29, on May 27, 1930. Both the state and federal statutes fail to make income tax liens prior to other tax liens. They become general liens against all real estate of the taxpayer according to the terms and limitations of the statutes, but the language used does not warrant the inference that the Legislature or Congress intended to make such a lien prior to general tax liens.

■ The federal government contends that taxes due it have priority over a claim for taxes due the state, county, or city, relying, in part, on the authority of New York v. Maclay, 288 U. S. 290, 53 S. Ct. 323, 77 L. Ed. 754; Spokane County v. United States, 279 U. S. 80, 49 S. Ct. 321, 73 L. Ed. 621. These decisions come clearly within the provisions of 31 USCA § 191, Rev. St. § 3466. It confers priority to debts due the United States by one who is insolvent or where the debtor makes an assignment. The decisions were based on the statute above mentioned. Since the facts in the instant case do not bring it within the provisions of this statute, the above authorities are inapplicable here.

Insolvency within the meaning of section 3466 must exist before this statute applies. United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 297, 67 L. Ed. 638. In this case it is stated: "The claim of the United States to the asserted priority rests exclusively upon the statute. No lien is created by it. * * * It establishes priority which is limited to the particular state of things specified." United States v. Oklahoma, supra. Beaston v. Farmers' Bank, 12 Pet. 102, 132, 9 L. Ed. 1017.

■ The priority is not an attribute of sovereignty, but depends on the acts of Congress. United States v. State Bank of North Carolina, 6 Pet. 29, 30, 8 L. Ed. 308; United States v. Middle States Oil Corp. (C. C. A. Okl.) 18 F.(2d) 231, 57 A. L. R. 848.

■ The lien established by section 3186 is a general lien upon all property of the taxpayer, and resembles, in many respects, a mortgage. While it is a lien, it is not necessarily to be preferred over any other lien. The government had not fastened a lien on any specific property; nor does it appear that there is no other property out of which the tax can be paid. If the government had sold the property for taxes in 1930, the date of its lien, the state tax which attached first, the county and municipal tax 1929, and street assessments, and the judgment would have been paid before the federal tax, or the property would have been sold subject to them. The land would have been taxed for general taxes in favor of the city and county, for 1930 and 1931 and 1932. Are these local groups to be deprived of the tax thus subsequently accruing if the government did not sell the property in 1930? It does not appear reasonable that Congress intended such a result. Since the lien is general and not specific, and expressly exempts the lien "as against any mortgagee, purchaser, judgment creditor until notice has been filed by the collector," it would appear that the lien, from the time of notice, operates as a mortgage or judgment lien, subject to enforcement by the government if it elects to enforce it. Congress could have provided here, as it did in section 3466, that the lien is to be paid first, but it does not do so.

Having made the provision in the one and refrained from it in the other, the inference is that no such priority was intended.

The property in this suit should be sold and the proceeds applied in accordance with the rights of the claimants when the proceeding was instituted, for neither party could act after that, except on the orders of the court. Applying this rule, the proceeds will be applied: First, to the annual general taxes of the city and county for the years 1929 to 1932, inclusive; second, the street assessments; third, the judgment; fourth, the state taxes; fifth, the government taxes.