**SMITH v. UNITED STATES et al.**

Civ. No. 1219.

United States District Court
D. Hawaii.

July 28, 1953.

Smith, Wild, Beebe & Cades, Honolulu, Hawaii, J. Edward Collins, Honolulu, Hawaii, for plaintiff.

A. William Barlow, U. S. Atty. District of Hawaii, Winston C. Ingman, Asst. U. S. Atty. District of Hawaii, for defendant United States of America.

Harold W. Nickelsen, Deputy Atty. Gen., Territory of Hawaii, for defendant Territory of Hawaii.

McLAUGHLIN, Chief Judge.

This action is for declaratory relief under 28 U.S.C. §§ 2201–2202, wherein Alvin A. Smith, the United States and Territory of Hawaii Tax Commissioner Torkel Westly (hereinafter referred to as Territory) seek a decree establishing the order of priority to be accorded their liens upon a certain escrow fund.

The evidence shows the following facts: Airways Hotel, Limited, (hereinafter referred to as Airways), a Territory of Hawaii corporation, was sorely pressed by creditors prior to September 30, 1949. Airways was unable to meet its obligations as they matured, and a few collection suits were initiated against it. In order to continue in business, representatives of Airways consulted Smith, doing business under the style name of Credit Bureau of Hawaii. Smith informally discussed with Airways' creditors, the Territory Tax Commission and the Bureau of Internal Revenue his "pooled account plan," whereby Airways would pay a specified sum each month to Smith as trustee, who in turn would prorate such amount to the various creditors. Substantially all of the creditors, including the Territory and United States, agreed to such a plan.

Under the "pooled account plan," Airways executed and delivered a promissory note to Smith for $45,985.09 on September 30, 1949. The $45,985.09 represented approximately $36,675 due to secured and unsecured creditors, $2,575 to the United States for taxes, $3,640 to the Territory for taxes and $3,100 to Smith for services. Under the terms of the note, Airways promised to pay $750 each month with interest of 12% per annum. Simultaneously, Airways executed and delivered an instrument called a trust chattel mortgage, with Smith as trustee, to secure the above note. Substantially all of the physical assets of Airways were covered by the alleged mortgage. The alleged mortgage was duly recorded on October 3, 1949. Under the arrangement, Smith did not personally assume the debts of Airways.

Monthly installment payments on the note were duly made by Airways until March 27, 1952. On that date, Airways defaulted in payment, and a balance of $21,875.23 still remains unpaid. On March 27, 1952, Airways executed and delivered to Smith a power of attorney, which included the powers to operate the business and to sell or transfer the business or business premises. Some time in April 1952, Smith took physical possession and began running the business of Airways. Between May 1949 and October 1952, various tax liens of the Territory and United States had attached to the assets and property of Airways.

Later, Smith found a purchaser who agreed to buy the assets and property of Airways for $31,000. Whereupon Smith, the United States, the Territory and the Bishop National Bank of Hawaii, the escrow holder, signed an escrow agreement on October 29, 1952. Under the terms of the escrow agreement, the United States and Territory agreed to release all tax liens on the assets and property of Airways upon deposit of the entire purchase price in the escrow account. Smith, the United States and the Territory agreed to look to the escrow fund for satisfaction of their claims after judicial determination of the priority of their respective liens. Subse-

quently, this declaratory judgment suit was initiated.

The United States's tax claims against Airways are as follows:

| Kind of Tax [1] | Amount Due [2] | Date Assessment List Received | Date Lien Filed [3] |
|---|---|---|---|
| W | $ 656.47 | 5–23–49 | 7–12–49 |
| IC | 184.04 | 5–26–49 | " |
| W | 65.40 | 6– 6–49 | 7–13–49 |
| U | 189.96 | 9– 7–49 | 10–19–49 |
| U | 517.56 | 12–14–50 | 2–15–51 |
| W&IC | 62.05 | 2–20–51 | 3–28–51 |
| W&IC | 1043.98 | 5– 8–51 | 6–12–51 |
| U | 928.27 | 6– 8–51 | 7– 9–51 |
| W&IC | 1745.73 | 8– 9–51 | 9–12–51 |
| W&IC | 1546.31 | 11–14–51 | 12–19–51 |
| W&IC | 2063.05 | 2– 8–52 | 3–12–52 |
| U | 250.41 | 2–26–52 | 4– 7–52 |
| W&IC | 1786.71 | 5– 9–52 | 5–16–52 |
| U | 776.29 | 6– 6–52 | 6–18–52 |
| W&IC | 450.15 | — | 10–17–52 |
| | $12,266.38 | | |

The Territory's tax claims against Airways are as follows:

| Kind of Tax | Amount Due [1] | Date Lien Attached [2] |
|---|---|---|
| General Excise | $1,224.41 | 1–19–51 |
| "        " | 1,067.08 | 3–30–51 |
| "        " | 1,721.56 | 11–15–51 |
| "        " | 350.56 | 12–14–51 |
| "        " | 76.90 | 2–11–52 |
| "        " | 677.45 | 5– 5–52 |
| "        " | 894.46 | 5– 5–52 |
| Compensation & Dividends | 82.81 | 4–24–52 |
| " | 74.76 | " |
| " | 75.69 | " |
| " | — | 10–10–52 |
| | (Penalty & interest due only) | |
| | $6,245.68 | |

1. W—Federal Withholding Tax
   IC—Federal Insurance Contribution
   U—Federal Unemployment Tax

2. Exclusive of penalty and interest

3. Filed with the Registrar of Conveyances, Territory of Hawaii

1. Exclusive of penalty and interest

2. Date of return or assessment

## I

The United States contends that the delivery of the alleged trust chattel mortgage by Airways to Smith on September 30, 1949 was in effect a voluntary assignment for the benefit of creditors, therefore, the debts owed the United States must be accorded priority under 31 U.S.C.A. § 191. Furthermore, the United States argues that, if the alleged trust chattel mortgage did not amount to a voluntary assignment, surely such an assignment resulted when the power of attorney was given Smith on March 27, 1952.

31 U.S.C.A. § 191 provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 191 "had its origin in 1790 and after several later accretions took substantially its final form in 1797," United States v. Press Wireless, Inc., 2 Cir., 1951, 187 F.2d 294. It is also generally known as section 3466 of the Revised Statutes. Being an old law, it has been much construed by the courts.

■ Section 191 is not limited to the orthodox general assignment for the benefit of creditors. Where the directors passed a resolution placing the property and business of their bank in the exclusive possession and control of the state superintendent of banks for the benefit of creditors, there was a voluntary assignment within the meaning of section 191. Bramwell v. United States Fidelity & Guaranty Co., 1926, 269 U.S. 483, 46 S. Ct. 176, 7 L.Ed. 368. A consent receivership is equivalent to a section 191 voluntary assignment. Price v. United States, 1926, 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373; United States v. Butterworth-Judson Corp., 1926, 269 U.S. 504, 46 S.Ct. 179, 70 L.Ed. 380; People of New York v. United States, 3 Cir., 1939, 106 F.2d 210.

■ Section 191 "priority does not attach while the debtor continues the owner and in possession of the property". Bramwell v. U. S. Fidelity Co., supra, 269 U.S. at page 488, 46 S.Ct. at page 177, 70 L.Ed. 368. See also Beaston v. Farmers' Bank, 1838, 12 Pet. 102, 133, 9 L.Ed. 1017. In the Bramwell, Price and Butterworth-Judson cases, the Supreme Court emphasized the fact that the state superintendent or the receiver took possession and control of all the property and business of the debtor. The facts here clearly show that Airways remained in possession and control of its property and business after the execution and delivery of the trust chattel mortgage. Consequently, this Court finds that the delivery of the mortgage by Airways on September 30, 1949, was a bona fide security transaction and not a voluntary assignment within the meaning of section 191.

■ Opinions of the Supreme Court indicate that a section 191 priority can attach only when there is a divestment of all the property of the debtor. United States v. Hooe, 1805, 3 Cranch. 73, 91, 2 L.Ed. 370; Conard v. Atlantic Insurance Co., 1828, 1 Pet. 386, 439, 7 L.Ed. 189; United States v. State of Oklahoma, 1923, 261 U.S. 253, 260, 43 S.Ct. 295, 67 L.Ed. 638. A power of attorney creates an agency relationship, and the giver of the power remains the legal owner. 2 Am.Jur., Agency, § 26, p. 29. In Bramwell v. U. S. Fidelity Co., supra, the appellant vigorously argued the necessity of a transfer of title under section 191, which Justice Butler overruled. However, his opinion did not overrule the earlier observations about the necessity of divestment of property, but limited the ruling to the facts of that case. Id., 269 U. S. at page 489, 46 S.Ct. 176, 70 L.Ed. 368. The Bramwell case stressed the fact that the state administrator was put in possession and control of the bank's property and business for the sole purpose of

liquidation for the benefit of all creditors. Such was also true in the consent receiverships in the Price and Butterworth-Judson cases.

■ The power of attorney given in this case was broad enough to authorize Smith to liquidate the business of Airways. However, the purpose of this power of attorney was to buttress the trust chattel mortgage securing the creditors for whom Smith was trustee. It was not given for the sole purpose of liquidating Airways' business for the benefit of all existing creditors. Consequently, the facts here are unlike the circumstances in the Bramwell, Price and Butterworth-Judson cases. Thus, divestment of property being absent, this Court feels that the power of attorney did not amount to a voluntary assignment within the meaning of section 191.

There being no voluntary assignment, section 191 is not applicable in this case. This ruling makes unnecessary findings as to whether Airways was insolvent and whether the mortgage covered all assets of Airways—questions clouded by conflicting testimony.

## II

Priority Between Smith and Territory

The Territory claims that its tax liens have priority over the prior recorded mortgage by virtue of its statutes. Section 5474, Revised Laws of Hawaii 1945, as amended by Act 220, Session Laws 1945, relating to general excise taxes, provides:

"A tax due and unpaid under this chapter shall be a debt due the Territory and shall be a lien upon the personal property used in the business or occupation upon which it is imposed. *The lien shall have the same priority as the lien of territorial real property taxes.*" (Emphasis added.)

The pertinent parts of Section 5167, Revised Laws of Hawaii 1945, as amended by Act 220, Session Laws 1945, reads:

"Every tax due upon real property, * * * *shall be a paramount lien* upon the property assessed * * *." (Emphasis added.)

Section 5347, Revised Laws of Hawaii 1945, as amended by Act 116, Session Laws 1951, relating to compensation and dividends taxes, provides:

"* * * If any employer shall fail, neglect, or refuse to deduct and withhold from the compensation paid to an employee, or to pay over, the amount of the tax imposed by this chapter, such employer shall, moreover, be liable to pay to the territory the amount of said tax, *which amount shall * * * form a lien on said employer's entire assets, having priority over all other claims of any person.* * * *" (Emphasis added.)

■ Unfortunately, the Territorial courts have not construed the above tax statutes. "Territorial like state courts are the natural sources for the interpretation and application of the acts of their legislatures". Stainback v. Mo Hock Ke Lok Po, 1949, 336 U.S. 368, 383, 69 S.Ct. 606, 614, 93 L.Ed. 741. Under the doctrine of abstention, a federal court should stay its hands in equity cases where there is a possibility that determination of the doubtful question of state law by the state court might dispose of the entire case on an independent state ground and make unnecessary the adjudication of a constitutional question. Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Spector Motor Co. v. McLaughlin, 1944, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; Note, 48 Columbia L. Rev. 575 (1948). Depending on the relief sought, a suit for declaratory judgment may not differ from an ordinary equity suit. Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 231, 64 S.Ct. 7, 88 L.Ed. 9. Even assuming that this suit is equivalent to an equity action, the doctrine of abstention does not apply. Since no constitutional question is involved and the doubtful questions of local law will not terminate the entire controversy, this Court, though reluctant, must determine the construction of the pertinent Territorial tax statutes. Public Utilities Commission v. United Fuel Gas Co., 1943, 317 U.S. 456, 463, 63 S.Ct. 369, 87 L.Ed. 396.

■■ A state legislature has the power to make taxes a lien upon all the property of the owner of the property taxed. Hodge v. Muscatine County, 1905, 196 U. S. 276, 25 S.Ct. 237, 49 L.Ed. 477. Furthermore, it has power to accord tax liens priority over a mortgage or any other lien existing against the property, whether created before or after the assessment of the tax. 51 Am.Jur., Taxation, § 1016, p. 887; Minneapolis Threshing Machine Co. v. Roberts County, 1914, 34 S.D. 498, 149 N. W. 163, L.R.A.1915D, 886; State v. Wynne, 1939, 134 Tex. 455, 133 S.W.2d 951; Moran v. Leccony Smokeless Coal Co., 1940, 122 W.Va. 405, 10 S.E.2d 578, 136 A.L.R. 1007, certiorari denied Piney Coking Coal Land Co. v. James, 1940, 311 U.S. 714, 61 S.Ct. 396, 85 L.Ed. 465; Sweeney Electrical Co. v. Poston, 1942, 110 Colo. 139, 132 P.2d 443. Section 55 of the Organic Act, 48 U.S.C.A. § 562, "provides, in effect, that the territorial Legislature may not invade the domain of Congress as to subjects of legislation; but, aside from that, it concedes to it all the powers of a legislature of the states." Peacock & Co. v. Pratt, 9 Cir., 1903, 121 F. 772, 775. See also Kitagawa v. Shipman, 9 Cir., 1931, 54 F.2d 313; Yerian v. Territory of Hawaii, 9 Cir., 1942, 130 F.2d 786. In the absence of Congressional limitation, the Territory has the legislative power to create tax liens and accord them priority over any prior or future lien.

The language of sections 5474 and 5167, as amended, is clear in according the general excise tax liens of the Territory priority over the recorded trust chattel mortgage of Smith. The statutes make such tax liens on the personal property used in business *paramount* liens.

Section 5347, as amended in 1951, troubles this Court. Prior to 1951, section 5347 merely declared that compensation and dividends taxes withheld by an employer were held in trust by him for the Territory. The 1951 amendment made such taxes a lien on the "employer's entire assets, having priority over all other claims of any person."

■ Smith argues that the word "claims" excludes liens. The term "claim" is comprehensive in nature and embraces secured as well as unsecured claims. A lien is, in fact, a secured claim. Adopting the restrictive construction advanced by Smith will, in effect, nullify the priority clause of section 5347, since tax liens have priority over unsecured claims anyway. The words "all other claims" includes mortgage as well as other liens.

■■ Smith further contends that compensation and dividends tax liens should not retroactively supersede liens of mortgages duly recorded prior to the 1951 amendment. As a rule of construction, a tax lien priority statute will not operate retrospectively unless the language therein clearly so indicates. 51 Am.Jur., Taxation, § 1016, p. 887; Central Trust Co. v. Hall, 1929, 106 W.Va. 687, 146 S.E. 825; Hulin v. Butte County, 1904, 18 S.D. 339, 100 N.W. 739. The words "all other claims" in section 5347, as amended, may mean all other claims henceforth or all other claims both prior and future. In Moran v. Leccony Smokeless Coal Co., supra, the court construed the West Virginia consumer's sales tax and gross sales tax liens priority statutes to apply retroactively to a mortgage lien antedating the statutes. The words "priority over all other liens and obligations" in those statutes were given the "ordinary plain and simple meaning which the words used imply." Id., 122 W.Va. at page 411, 10 S.E.2d at page 581. However, the West Virginia court painstakingly reviewed the history of the tax statutes involved and read the intent of the legislature into the provisions of those statutes. Legislative history shows that the Territorial Legislature intended to strengthen section 5347 as to provide a lien for the tax, but is silent as to the application of the priority provision. See House Journal, 26th Hawaii Legislature, p. 494 (1951); Senate Journal, 26th Hawaii Legislature, pp. 911–2 (1951). The statutory language not being crystal clear and legislative history being of no assistance, this Court construes the priority provision of section 5347 as not affecting a mortgage lien antedating the 1951 amendment.

■ As between Smith and the Territory, the general excise tax liens have pri-

ority over Smith's mortgage lien, but the compensation and dividends tax liens are subordinate in rank to the mortgage lien.

### Priority Between Smith and United States

Congress has provided that a lien shall attach to all the property and rights to property belonging to a taxpayer if the latter refuses or neglects to pay any tax after demand. 26 U.S.C. § 3670. However, such a tax lien is not valid "as against any mortgagee, pledgee, purchaser, or judgment creditor" until notice of such lien has been filed by the collector "in the office in which the filing of such notice is authorized by the law of the State or Territory". 26 U.S. C. § 3672. Section 12790, Revised Laws of Hawaii 1945, as amended by Act 216, Session Laws 1949, provides that notices of United States tax liens may be filed in the Bureau of Conveyances.

■ Section 3672 clearly protects prior recorded mortgages. United States v. Beaver Run Coal Co., 3 Cir., 1938, 99 F.2d 610; MacKenzie v. United States, 9 Cir., 1940, 109 F.2d 540, 542; United States v. Sampsell, 9 Cir., 1946, 153 F.2d 731, 734. A court has said that the fact that the mortgagee had notice of federal tax assessments against the mortgagor at the time of the mortgage transaction is immaterial, if the tax liens were not filed in accordance with section 3672. United States v. Beaver Run Coal Co., supra.

■ Consequently, the United States tax liens filed with the Territorial Bureau of Conveyances prior to October 3, 1949, the date when Smith recorded his mortgage, have priority over the mortgage lien. However, by virtue of section 3672, all federal tax liens filed subsequent to October 3, 1949, are subordinate and inferior to Smith's mortgage lien.

### Priority Between Territory and United States

26 U.S.C. § 3670 makes the United States a general lienholder on all the taxpayer's property, if the latter neglects or refuses to pay any tax after demand. Such a tax lien generally arises at the time the assessment list is received by the Collector of Internal Revenue. 26 U.S.C. § 3671.

However, neither section 3670 nor section 3671 gives the United States preferred liens. See City of Winston-Salem v. Powell Paving Co., D.C.M.D.N.C.1934, 7 F. Supp. 424.

■ Where the priority of federal tax liens and other general liens is in question, the principle of "first in time, first in right" controls. In United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 704.

Justice Minton stated:

"While the Town was not a judgment creditor, it was the holder of a general lien on all the taxpayer's property. So was the United States a general lienholder on all the taxpayer's property. Thus, both claim general liens. *Without more, priority would depend upon the dates the liens arose.*" (Emphasis added.)

However, since 31 U.S.C.A. § 191 was found to apply, the United States was accorded priority over the Town of Walpole. See also the observations of Judge Parker in United States v. City of Greenville, 4 Cir., 1941, 118 F.2d 963, 966.

■ In this case, both the Territory and the United States are general lienholders on the property of Airways. Since 31 U.S.C.A. § 191 does not apply here, as between the Territory and the United States, the priority of their various tax liens will depend upon the dates when they arose.

### Priority Among Smith, Territory, and United States

■ This Court is thus faced with the anomalous situation where Smith's mortgage lien has priority over most of the United States's tax liens, the bulk of the Territory's tax liens supersedes the mortgage lien and some of the United States's tax liens are prior to the Territory's liens, and where the escrow fund is insufficient to satisfy the claims of all three parties. Although cases in point are meager, the few cases in existence are helpful as judicial guideposts.

In Ferris v. Chic-Mint Gum Co., 1924, 14 Del.Ch. 232, 124 A. 577, 580, under Dela-

ware law, the state, county and city tax and sewer liens were given priority over the mortgage lien; the mortgage was recorded prior to the attachment of federal tax liens; and some of the federal tax liens antedated some of the state, county and city tax and sewer liens. The Delaware court resolved the problem by setting the following order of priority: first, state, county and city tax and sewer liens; second, mortgage lien; and third, United States tax liens. Its rationale was as follows:

"Here we have three claimants, each claiming certain preferences. The first (the state, county and city) admittedly outranks the second (the mortgagee) and we have seen that the second outranks the third (the United States). Yet it is contended that the third is to be preferred to the first and thus displace the second from a position of preference over the third. If this contention be accepted then indeed will the last be declared to be first. When the government agreed by Section 3186 [now 26 U.S.C. Sec. 3672] to take rank after the mortgagee, it must necessarily follow that it is subordinate in rank to those who are superior to its immediate senior." 14 Del.Ch. at pages 239–240, 124 A. at page 580.

The highest court of Connecticut similarly resolved a tripartite priority problem in Brown v. General Laundry Service, Inc., 1952, 139 Conn. 363, 94 A.2d 10. It reasoned that Congress, by subordinating federal tax liens to mortgage and judgment liens in 26 U.S.C. § 3672, subordinated such federal liens to such other incumbrances having priority over those mortgage and judgment liens.

The first inkling as to another method of resolving the tripartite priority problem here involved appeared in Spokane County v. United States, 1929, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621. Although a third party mortgagee was not involved, Chief Justice Taft referred to the contention made by the United States in the Spokane County case and stated 279 U.S. at page 91, 49 S.Ct. at page 324,

"Moreover it is contended by the government that the relative priorities could have been maintained in that case [Chic-Mint Gum Co. case] by setting apart sufficient funds to pay the mortgage before paying the federal taxes and then providing for payment of the state tax out of the sum so set apart."

After citing Chief Justice Taft's dicta, a circuit court of West Virginia adopted the solution suggested in the Spokane County case. In Hopkins v. Eureka Coal Co., 1944, 33 Am.Fed.Tax Rep. 1627, the court ruled that the order of priority was first, mortgage liens; second, United States tax liens; and third, West Virginia tax liens. However, the amounts due the mortgagees were ordered set apart to permit West Virginia to first satisfy its liens from such amounts.

A federal District Court recently dealt with a tripartite priority problem. In Bank of Wrangell v. Alaska Asiatic Lumber Mills, D.C.D.Alaska 1949, 84 F.Supp. 1, the court construed 31 U.S.C.A. § 191 to accord the real property mortgages priority over taxes owed the United States. Although under section 191 the United States taxes had priority over the Town of Wrangell tax liens, the statutes of Alaska made the latter's tax liens superior to the mortgage liens. With respect to the proceeds from the sale of the mortgaged property, the court ruled that the Town had first priority without discussing the tripartite priority problem involved.

This Court feels that the result reached in the Eureka Coal case is the fairest. The Eureka Coal solution maintains the relative priorities established by the local and federal statutes, where as the Chic-Mint Gum rule arbitrarily ignores the principle of "first in time, first in right" which should apply to the general liens of the local and federal governments.

Applying then the Eureka Coal rule, this Court finds the order of priority in this case to be as follows:

1. Costs of escrow.

2. Costs of the suit, amounting to $30.-70.

3. United States tax liens filed prior to October 3, 1949.

4. Balance of $21,875.23 due Smith on the note and mortgage with interest plus a reasonable attorney's fee to be set apart.

5. Various United States and Territory tax liens with interest and penalty in their respective order based on the dates when the liens arose.

The fund set apart under the fourth order of priority will be payable to the Territory for its unsatisfied general excise tax liens before being actually applied to satisfy the claims of Smith.

The foregoing shall constitute findings of fact and conclusions of law unless the parties desire additional findings in which event they may be proposed upon notice.

Smith may apply for the setting of a reasonable attorney's fee payable under the terms of the trust chattel mortgage.